Council, whenever you're ready, you may proceed. Thank you. Your Honors, Attorney Vogel, may it please the Court. My name is Amy Schuler, and I'm here on behalf of the appellant, the respondent, Frank Weber. This is on an appeal of a motion, a denial of a motion to modify and, or in the alternative, terminate maintenance. The parties were married. They enjoyed a long-term marriage. Their divorce was finalized in 2003. At that time, the court essentially divided the marital assets approximately in half. At the time, there was a marital residence, and the respondent, my client, had a 401K through his employer. He was also ordered at that time to pay $1,000 a month maintenance. He was employed at the Hartford-Woodriver Terminal. At the time, I believe he earned approximately $50,000. There was testimony that he, over time, had increases in wages. And at the time of his retirement in 2014, that he was earning approximately $88,000. At the time of the divorce, the initial judgment stated that the respondent's retirement was, in fact, a basis for the modification of the maintenance. That judgment, of course, is in the brief and is referenced. That, upon his retirement at age 67, the motion was then backfiled. So for approximately almost 12 years, the respondent paid his maintenance, faithfully, the $1,000 a month. The petitioner testified that she worked at a Casey's gas station and that she was earning approximately minimum wage at the time of the divorce. And that since the time of the divorce, she had not had any outside employment. That she did, in fact, care for a disabled sister-in-law. So her income, of course, had not changed at all. In fact, it had actually decreased. So at the time of retirement, my client is 67 years old. He testified that he was the oldest man in the plant. The judge in his order stated that it was apparent that the retirement was made in good faith and not to avoid any kind of maintenance. He is, in fact, remarried and lives in his residence with his wife. His only two assets at the time of the motion to modify were his 401k and his home, which also had a mortgage that he resided in with his current wife. His sources of income were Social Security of approximately $2,300 a month. And he had at his disposal the 401k worth approximately $280,000. The issues raised in our appeal are essentially, there are five issues listed. They sort of are intertwined. Most notably are the two issues of his sources of income. One, the source of income of Social Security. And two, the fact that the court, the trial court looked at the respondent's 401k that was previously divided in determining his income stream in terms of maintenance. We're arguing that, Your Honors, that's counting, that's essentially double dipping. That at the time of the divorce in 2003, the petitioner was awarded half of the 401k. There was some testimony that in two different places in the record that it was $65,000 or $80,000. And that was the amount that she had received. So it's unclear exactly what that amount was. But that money she has spent over the course of the ten years. My client, on the other hand, had contributed additionally to the 401k. So his, of course, had increased in value. Now, our argument is, is that similar to the line of cases in Illinois that value the business, the goodwill of businesses that say, sorry, Emory Marriage of Talty and Emory Marriage of Zells, that basically state that you can't count an asset twice. You can only count it once for a property settlement and then once as an income. While this is clearly not an initial divorce decree, this is a maintenance modification. I'm suggesting to you that in counting my client's 401k twice, the court error, in that essentially you're going back and modifying the original decree of the court, the trial court in 2003. You're essentially awarding the petitioner more of the 401k than what she was initially granted. The Supreme Court in Wisconsin, while not dispositive, is very clear on point about this. They address this issue straight head on. Emory Marriage of Cronforce, Wisconsin firmly established that this double dipping that I'm calling is not allowed. That it cannot be considered an asset of the marriage, divisible, and then treated as income for maintenance purposes. I'm suggesting that that's what the trial court in Madison County did. Now, I will say that I believe that any additional income or any additional, any additives to the 401k, would be treated as a separate account to be looked at in terms of a maintenance calculation. Excuse me, Michelle. Do you think that a court in 2003 can decide what constitutes a substantial change into the future? Do you think that that portion of its order, which Judge Mangarelli seemed to key into, whether this was or was not a substantial change, do you think that they can do that? Because that seems to be what Judge Mangarelli sat on, was the substantial change. I agree. He found that there wasn't a substantial change. Right. Which I obviously were here disagreeing with that, clearly. But I think it was clear from the order of Judge Crowder at the trial court that she specifically noted that in her order. I found that to be very telling, that she saw that as a possible basis. She saw that there was a future that, you know, the age of the parties, they were in their 50s, and that retirement was inevitable at some point in time for my client. So, yes, I think it's possible that she could foresee that that was going to happen. We do have a number of aging divorces these days, and these are issues that tend to be cropping up more and more. So I do see it as something that, going forward, we will be facing. Yes. I'm not sure, though, why it matters, because there's a two ñ isn't there still a two-year? You can't ask for a change or for a modification within so many years, or is that gone now with the new law? I don't believe that that's an accurate statement today. Okay. Of maintenance, perhaps. Okay. A custody determination was not maintenance. Custody was not maintenance. Okay. I believe, yeah, I think that perhaps that with the changes in the maintenance law, Judge Mangarelli was looking more at the calculations and less at what we look at before we get to the calculations. I'm not disputing the calculation necessarily. What I'm disputing is that the income that he looked at as the source of my client's income was income that shouldn't have been looked at. But factors under the statute are what he looked at specifically in the order. But then he goes ahead and recalculates. He did. He recalculated based on the current maintenance statute, the new maintenance statute that took effect at the time, because this was tried in March. So doesn't that support his finding then? I don't believe it does. I still believe that the underlying income was wrongly treated as income. I believe that his, the idea that when a client has basically two sources of income, a 401K and Social Security, and the 401K was previously distributed as an asset, I think you're essentially then saying, okay, we're going to make you pay your maintenance from Social Security. Now, my, you know, the Ms. Vogel has stated that there's a, in the case of Crook and Mueller, which the Supreme Court has addressed the issue of Social Security, that it's not divisible in divorce in a property settlement. But essentially, if you're ordering my client to pay maintenance from his Social Security, you're essentially dividing his only asset, because I'm suggesting that his 401K was already divided. So the only income stream that I'm arguing is eligible to be looked at in terms of a maintenance would be the increased 401K from his 10 plus years of working. I do believe that there was a substantial change in circumstances. I also believe that under, not just in the judgment where it said that his retirement was a basis, I also believe that clearly his income decreased by approximately $60,000 and that he had retired and his only source of income was, in fact, Social Security. Another issue that we looked at was Judge Mangarelli also imputed income. And I think that the calculations based on, I believe he quoted the Census Bureau and he looked at the 401K, and he determined a random income stream. Well, I would argue that that's not really taking into account a lot of factors. For instance, a decline in the market of 20% or the fact that my client still had a mortgage that he was paying and those type of things. So I did find that the imputing of income was not necessarily appropriate. And, again, the underlying income that was being used did not comport because of the fact that it was already previously divided or that it was Social Security and shouldn't have been divided. Additionally, opposing counsel mentioned a case, In re Marriage of Shrimp. She stated that that case was, in fact, very analogous to the case at hand. But I'd like to point out that in In re Marriage of Shrimp that the respondent in that case, the payor, was essentially had three times, I believe, the assets that my client had. One of his sources of income was a pension or a 401K. Another source of income was, in fact, Social Security. But he also had sold the business that he worked at on an installment contract. So he, in fact, was receiving income from various sources. So the court then, in fact, did deny the maintenance modification in his case or would not reduce it as much. So I don't- Did the court in Shrimp in any way take out the Social Security amount in considering the income stream? I'm not sure that that was addressed, that the Social Security amount was addressed. I know that the court specifically spoke to things like the fact that Mr. Shrimp had bought a travel trailer, that he had, in fact, had more income at his disposal. And he was able to save a considerable sum since the time of his divorce. My case is not quite that way. My client did testify that he went out to dinner a few times and that he even made some repairs on his bathroom. And that he still resided in this home that was valued at $132,000. Nowhere was he taking lavish vacations or buying expensive items. Was it appropriate for the court to consider her stream of income? Whose? I'm sorry. Marjorie's. Marjorie's. Marjorie's. I believe that Judge Magnarelli, in our case, did consider and impute the $800 that she would have received in Social Security. No other source of income or no other ability to earn any income or anything like that. Specifically, Marjorie is waiting to draw Social Security. She's not drawing now. She wants the increase in value. But he did impute that as if she were. He did. He did, in fact, impute that at some point in time. Again, I'm not sure that the case law suggests that we're allowed to divide Social Security. I think the Crook and the Mueller cases basically stand for the proposition, while they're talking about a property division. Again, they stand for the proposition that, however unfair it may be, Social Security is really not divisible as an asset. But do you have any case that actually says you can't consider it as a stream of income? Just the Wisconsin cases. No Illinois cases. I'm not able to find it. I'm just simply saying that, essentially, take everything out, and if you have two competing Social Security payments, you are essentially dividing those assets. Well, let me ask you again. Unless one is derived from American status, they're separate. They're separate. However, if we order my client to pay maintenance, you're essentially asking him. It's like a property settlement. You're essentially divvying up the Social Security, which I believe is inappropriate based on the case law. Rather than dividing assets, it's recognition of different streams of income. I'm sorry. I'm not sure. From your statement, it seems like you're saying that an offset of Social Security payments constitutes a distribution of assets, a division of assets. Aren't you basically recognizing that you have two divergent streams of income and recognizing them as that rather than a division or distribution of marital assets? Well, I think it's a fine line. I think certainly Social Security is not considered an asset for property division and an initial divorce decree. Right. And then if you end up in a modification where essentially I'm arguing that the 401K can't really be distributed because it was previously distributed. It's race judicata. We're changing the initial decree. And then all we are left with are two Social Security benefits. I think that you are essentially dividing their only asset. Yes, it's an income stream, but I think that's effectively what we're doing. What about the addition to his plan, the amount by which it grew? Just that amount. I think that that's a fair game. I would argue that the original portion that was awarded to him that in fact accrued any increase in value to that I think would be separate. But I do believe that any additional contributions that he made over the course of ten years essentially would be upper graph or could be counted towards a maintenance calculation. And did that happen here? No, I don't believe that happened. It wasn't divided out. No, it was not. The 401K was initially divided. I understand, and my question is the amount by which it grew was not divided up. We had testimony of what she received at the time of the divorce, but we did not have clear evidence of what the increase in value was. Okay. Thank you. Thank you. Thank you, Counsel. Counsel? Please, the Court. My name is Suzanne Vogel. I represent Marjorie Weber. I'd like to address, first of all, a few items that Ms. Schuller just referenced. The first thing that I would like to address is that Ms. Schuller stated that the original trial court judge, Judge Crowder, basically stated in her order that Mr. Weber's retirement would amount to a substantial change in circumstances. The order, in fact, does not say that. It says that Mr. Weber's future retirement may be a modifying factor. There's a difference between a substantial change in circumstances and a modifying factor. Section 510 of the IMDMA states that the first question that has to be answered in making a determination about whether to modify maintenance is whether there has been a substantial change in circumstances. If there has been, then the Court is to consider nine different factors. So what the Court was saying in 2003 was that one of the factors, there may be a modifying factor at his retirement. She was not stating that's automatically a substantial change in circumstance. Regarding a substantial change in circumstance, it's interesting that Mr. Weber's financial situation actually improved. It improved a great deal from 2003 to 2015. Mr. Weber had over $400,000 in assets at the time of this hearing last year. My client, Ms. Weber, had approximately $1,700 in assets at the time of the hearing. Mr. Weber testified that in the interim period between the time of the divorce and the trial last year, that he had been paying, he had continued working, he had continued contributing to the profit-sharing plan. The increase in value had gone from $65,000 at the time of the divorce to $280,000. He also owned a life insurance policy with the cash surrender value of over $20,000 that was not mentioned this morning. He had enough. He was remarried. His new spouse was employed. They had enough money in this period to pay extra on the mortgage, their car payments. They owned four vehicles. They had made many improvements to the residence. And in kind of stark contrast, my client was living with her brother. She did not own a home. She didn't really own a vehicle. Her brother had been paying for a vehicle that he had put in her name. She was using it, but she considered it even to be her brother's vehicle. She had no savings. She had nothing. And when you look at these types of actions, one of the things you want to consider is you look at the standard of living that these people enjoyed while they were married. And you compare that to how they're living now. And my client's standard of living has drastically decreased. She and Mr. Webber's has at least maintained the same level, and I would argue he's living at a substantially higher level of living now. So there is a substantial change, and it's against my client that Mr. Webber's situation has improved. A couple of the facts I just want to reiterate here is that the party has been married 31 years. My client worked a little at the beginning of the marriage, but then after that she just stayed home and raised their child. She has no job skills. She had no job experience at the time of the divorce, other than the minimum wage job she held at the beginning of the marriage. She was at a big disadvantage job-wise compared to Mr. Webber when they got divorced. She also had health issues. She tried working at a minimum wage job. About the time of the divorce, she worked at a gas station, and she was only able to work there about two, two and a half years. And she was forced to quit because the job involved her lifting boxes and that type of thing. And she had back and neck issues, arthritis. And now she has arthritis and other issues. She's 63 now. She's unable to work. Since 2008, she's been living with her brother and his wife and caring for her sister-in-law, who has dementia. And she spends quite a bit of time with her sister-in-law. And it's not like she's sitting at home doing nothing. She's performing an important job. I'd like to discuss the two items that opposing counsel brought up this morning regarding the focus of this appeal is the income streams of Mr. Webber. Mr. Webber had two streams of income at the time of the hearing. One was Social Security. The other was imputed income from his profit-sharing plan that was worth $280,000. I'm going to disagree, obviously, with the characterization that Social Security cannot be divided. Crook and Crook, the case referenced in the appellant's brief, merely stated that a state court cannot offset marital assets at the time of the divorce against Social Security benefits. That was a completely different issue in that case. The petitioner in that case was trying to say, I'm retiring. I'm not eligible for Social Security. I have a pension instead. And I should be given credit against my pension for what I would have received in Social Security benefits. He was trying to say, reduce the amount of my pension as far as being potentially divided, because if I had been receiving Social Security, that would be divided. So take the amount I would have received in Social Security, reduce my pension by that amount, and then divide the pension. And the court said no. Actually, there is a federal statute that says maintenance and child support can be directly withheld from Social Security benefits. I mean, I don't see how that could be more on point. It's 42 U.S.C. section 659. Regarding the double-dipping argument, I understand what the appellant is stating, but I also disagree. The cases discussed in the appellant's brief dealt with division of assets in the original divorce, and they did not discuss pensions at all. There's no case law out there in Illinois that says that you have to exclude a pension that was awarded in a divorce in a later modification of maintenance action. There's just no case out there. There's the Wisconsin cases. There's two. Kronfors was the earlier case, and that case also did not say that. It doesn't not stand for that proposition. It, in fact, also involved an original divorce action. And there was no discussion in that case of a later modification of maintenance and whether you could consider any something that was awarded in the original divorce. It was also just not an issue. Olski briefly referenced Kronfors' later case, 1995, and I believe they mischaracterized the Kronfors case. There's one sentence in Olski that says Kronfors stands for the proposition that you cannot touch this asset that was previously divided in a divorce. Kronfors did not say that, in my opinion. But anyway, regardless, there's no Illinois case law concerning this particular issue. The statute, 510, Section 510, actually requires the court to consider the status of all assets awarded in the original divorce. That's clear. I mean, the trial court had no discretion. This is something the court had to consider. And since there's no case law, the statute actually requires the court to consider the status of the pension. I believe that's dispositive right there. Hypothetically, if the court were to agree that this is considered double-dipping, which I disagree it's double-dipping, because the double-dipping cases were discussed about they involve the division of assets in the original divorce. In that context, whether an asset could be considered an asset to be divided and also an income stream. And they did not even involve a pension. And they have no bearing on a later modification of maintenance action. That question just doesn't come up, because the court is not dividing assets. So it can't be counted twice. It can't be placed in two different categories. If you were to reverse the situation, and my client had kept her awarded profit-sharing plan, and for some reason the husband had depleted his here 12 years later, then if the court were to agree that we're not allowed to consider this amount awarded in a divorce, then necessarily you would have to say, well, the court cannot consider that the wife has this asset now, and the husband no longer has his, and she can draw money from it, and he can't because it's not there. The court would have to ignore that. And I believe that's fundamentally unfair. The court, under the statute, is required to look at the entirety of their financial picture for both parties. It shouldn't matter the source of whatever this asset came from. If, for example, another hypothetical, if the husband were to have inherited a million dollars in the meantime between the divorce and this modification, what's to keep the court then, if the court were to agree with the appellant, from looking and saying, well, this inheritance cannot be considered either. What's the difference between the inheritance and any assets that have been awarded in a divorce? There's no difference. Logically, there's no difference. They have to be treated the same. And then if you were to agree with that statement, then would all the assets in the divorce be excluded? And that certainly would not be fundamentally fair. Say, you know, a house, life insurance policies, stocks, bonds, if each party is sitting on all these assets that they were awarded in the divorce, the court, if the court were to agree with Ms. Scholler, then none of those assets could be considered. They would be ignored by the court. And how could that be considered equitable to either party? So my position is basically there's no case law to support the argument. 510 is clear that the court did exactly the right thing. And then also just I wanted to note that I did the math on whether even if the court were to agree that for some reason this portion of the profit-sharing plan should be excluded from determining his financial situation, if you subtract the original $65,000 from his profit-sharing plan that he was awarded in the divorce, his income stream would actually be higher than what it was at the time of the divorce. At the time of the divorce, my petitioner's Exhibit 7 is his pay stub from 2003. He was making approximately $3,300 a month net. In 2015, even if you excluded the $65,000, his income stream would be $3,500 a month. It's actually higher. So even if the court were to agree, there would be no difference in the outcome. And also that I also just want to note. Thank you. Thank you. Counsel? Specifically, my point was made there. The modification statute does ask the court to review the judgment and the distribution of assets at the time of the divorce and in the party's situation currently. And while there is an Illinois case law, exactly my point about the double-dipping issue, Cronforce was very clear. More than 30 years ago, this court made clear that when an employee's spouse's profit-sharing trust is awarded that spouse as an asset in property division, a circuit court may not consider the spouse's receipts from the trust as income available for maintenance after divorce. So while there isn't anything directly on point in Illinois, there is in other states. And I think that the Illinois courts, the appellate courts and some of the courts, have tapped and surrounded in terms of property division versus income stream. I think it's very clear that you can't double count an asset. And that's essentially what the trial court, I believe, has done. Finally... But what about the argument that even if you take that out, it comes out the same? I don't know that it does because the testimony wasn't necessarily there about the value changes in the 401K. I think certainly that that evidence could be looked at and re-evaluated. And I'm sorry to interrupt, but the court did enter that in its order. The court put it in its order. I don't believe that the court discounted the initial division of the asset. They took an imputed income stream from the entire 401K balance and treated it as income. I agree, but there wasn't another calculation performed by the court. No, there wasn't any other calculation besides that that I'm aware of. Then, again, the court also looked at total income at that point. I believe it was like $3,900, which would have been the income stream from the 401K plus the $2,300 for Social Security. I think the court's order said $3,900, and then they looked at the $800 from the petitioner. And while Social Security is assignable, that doesn't go to the heart of the issue here. Yes, you can attach Social Security for child support or maintenance purposes, but that's not what I'm suggesting. Those are cases, in my mind, where Social Security and other income streams are combined, and you basically have a bad actor who's not paying. That's different than what we have here. My argument is here that essentially what you're doing is dividing Social Security, which I don't believe is allowable under the current scheme and under the current case law. Thank you, counsel. We appreciate the briefs and arguments of both counsel. We'll take the case under advisement. The court will be in a short recess and resume oral argument.